UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


Linda C. McAulay,
        Claimant

        v.                                    Civil No. 11-cv-095-SM
                                              Opinion No. 2012 DNH 031

Michael J. Astrue, Commissioner,
Social Security Administration
        Defendant


**O R D E R**


        Pursuant to 42 U.S.C. § 405(g) and 1383(c)(3), claimant,

Linda McAulay, moves to reverse the Commissioner's decision

denying her applications for Social Security Disability Insurance

Benefits and Supplemental Security Income Benefits under Titles

II and XVI of the Social Security Act, 42 U.S.C. §§ 423, 1381-

1383c.  The Commissioner objects and moves for an order affirming

his decision.


        For the reasons discussed below, the Commissioner's motion

is denied and the claimant's motion is granted, to the extent she

seeks a remand to the Administrative Law Judge.

**Factual Background**

I.    <u>Procedural History</u>.

In February of 2009, claimant filed applications for Disability Insurance Benefits and Supplemental Security Income benefits, alleging that she had been unable to work since November 7, 2008, due to disabling pain from two herniated discs. Administrative Record ("Admin. Rec.") at 136.  Those applications were denied and claimant requested a hearing before an Administrative Law Judge ("ALJ").

In September of 2010, claimant, her attorney, and a vocational expert appeared before an ALJ, who considered claimant's applications de novo.  Three weeks later, the ALJ issued his written decision, concluding that claimant retained the residual functional capacity to perform the physical and mental demands of a range of light work.  <u>Id</u>. at 12.  Although claimant's limitations precluded her from performing her past relevant work as a housekeeper, the ALJ concluded that there was still a significant number of jobs in the national economy that claimant could perform.  <u>Id</u>. at 18-19.  Accordingly, the ALJ determined that claimant was not disabled, as that term is defined in the Act, from November 7, 2008, through the date of his decision (October 13, 2010).  <u>Id</u>. at 19.

The Decision Review Board selected the ALJ's decision for review, but it was unable to complete that review within the time allowed.  Admin. Rec. at 1.  Accordingly, the ALJ's denial of claimant's applications for benefits became the final decision of the Commissioner, subject to judicial review.  Subsequently, claimant filed a timely action in this court, asserting that the ALJ's decision is not supported by substantial evidence and seeking a judicial determination that she is disabled within the meaning of the Act.  She then filed a "Motion for Order Reversing Decision of the Commissioner" (document no. 11).  In response, the Commissioner filed a "Motion for Order Affirming the Decision of the Commissioner" (document no. 14).  Those motions are pending.

II.   Stipulated Facts.

Pursuant to this court's Local Rule 9.1(d), the parties have submitted a statement of stipulated facts which, because it is part of the court's record (document no. 16), need not be recounted in this opinion.  Those facts relevant to the disposition of this matter are discussed as appropriate.

**Standard of Review**

I.    "Substantial Evidence" and Deferential Review.

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  Factual findings and credibility determinations made by the Commissioner are conclusive if supported by substantial evidence.  See 42 U.S.C. §§ 405(g), 1383(c)(3).  See also Irlanda Ortiz v. Secretary of Health & Human Services, 955 F.2d 765, 769 (1st Cir. 1991).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).  It is something less than a preponderance of the evidence, so the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.  Consolo v. Federal Maritime Comm'n., 383 U.S. 607, 620 (1966).  See also Richardson v. Perales, 402 U.S. 389, 401 (1971).  Consequently, provided the ALJ's findings are properly supported, the court must sustain those findings even when there may also be substantial evidence supporting the contrary position.  See, e.g., Tsarelka v. Secretary of Health & Human Services, 842 F.2d 529, 535 (1st Cir. 1988); Rodriguez v.

<u>Secretary of Health & Human Services</u>, 647 F.2d 218, 222 (1st Cir. 1981).


II.   <u>The Parties' Respective Burdens</u>.

    An individual seeking Social Security disability benefits is disabled under the Act if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. § 423(d)(1)(A).   <u>See also</u> 42 U.S.C. § 1382c(a)(3).   The Act places a heavy initial burden on the claimant to establish the existence of a disabling impairment.   <u>See</u> <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146-47 (1987); <u>Santiago v. Secretary of Health & Human Services</u>, 944 F.2d 1, 5 (1st Cir. 1991).   To satisfy that burden, the claimant must prove, by a preponderance of the evidence, that her impairment prevents her from performing her former type of work.   <u>See</u> <u>Gray v. Heckler</u>, 760 F.2d 369, 371 (1st Cir. 1985); <u>Paone v. Schweiker</u>, 530 F. Supp. 808, 810-11 (D. Mass. 1982).   If the claimant demonstrates an inability to perform her previous work, the burden shifts to the Commissioner to show that there are other jobs in the national economy that she can perform.   <u>See</u> <u>Vazquez v. Secretary of Health & Human Services</u>, 683 F.2d 1, 2

(1st Cir. 1982).  See also 20 C.F.R. §§ 404.1512(g) and

416.912(g).


     In assessing a disability claim, the Commissioner considers

both objective and subjective factors, including: (1) objective

medical facts; (2) the claimant's subjective claims of pain and

disability, as supported by the testimony of the claimant or

other witnesses; and (3) the claimant's educational background,

age, and work experience.  See, e.g., Avery v. Secretary of

Health & Human Services, 797 F.2d 19, 23 (1st Cir. 1986);

Goodermote v. Secretary of Health & Human Services, 690 F.2d 5, 6

(1st Cir. 1982).  Ultimately, a claimant is disabled only if her:

> physical or mental impairment or impairments are of
> such severity that [she] is not only unable to do [her]
> previous work but cannot, considering [her] age,
> education, and work experience, engage in any other
> kind of substantial gainful work which exists in the
> national economy, regardless of whether such work
> exists in the immediate area in which [she] lives, or
> whether a specific job vacancy exists for [her], or
> whether [she] would be hired if [she] applied for work.

42 U.S.C. § 423(d)(2)(A).  See also 42 U.S.C. § 1382c(a)(3)(B).


     With those principles in mind, the court reviews claimant's

motion to reverse and the Commissioner's motion to affirm his

decision.

**Discussion**

I.  <u>Background - The ALJ's Findings</u>.

In concluding that claimant was not disabled within the
meaning of the Act, the ALJ properly employed the mandatory five-
step sequential evaluation process described in 20 C.F.R.
§§ 404.1520 and 416.920.  Accordingly, he first determined that
claimant had not been engaged in substantial gainful employment
since her alleged onset of disability: November 7, 2008.  Admin.
Rec. at 9.  Next, he concluded that claimant suffers from the
following severe impairments: "status post fusion at L4/L5 level,
moderate degenerative disc disease at L3/L4 level, and mild
degenerative disc disease at L2/L3 level."  <u>Id</u>.  Nevertheless,
the ALJ determined that those impairments, regardless of whether
they were considered alone or in combination, did not meet or
medically equal any of the impairments listed in Part 404,
Subpart P, Appendix 1.  <u>Id</u>. at 11-12.  Claimant does not
challenge those findings.

Next, the ALJ concluded that claimant retained the residual
functional capacity ("RFC") to perform the exertional demands of
light work.[1]  He noted, however, that claimant "can only

---

[2]    "RFC is what an individual can still do despite his or her
functional limitations.  RFC is an administrative assessment of
the extent to which an individual's medically determinable
impairment(s), including any related symptoms, such as pain, may
cause physical or mental limitations or restrictions that may

occasionally climb, balance, stoop, kneel, crouch, and crawl."
Id. at 12.  In light of those restrictions, the ALJ concluded
that claimant was not capable of returning to her prior job as a
housecleaning supervisor.  Id. at 17.


    Finally, the ALJ considered whether there were any jobs in
the national economy that claimant might perform.  Relying upon
the testimony of a vocational expert, the ALJ concluded that,
notwithstanding claimant's exertional limitations, she "is
capable of making a successful adjustment to other work that
exists in significant numbers in the national economy."  Id. at
19.  Consequently, he concluded that claimant was not "disabled,"
as that term is defined in the Act, through the date of his
decision.


    Claimant challenges that decision on three grounds,
asserting that the ALJ: (1) failed to properly consider all the
relevant medical evidence supporting her disability claim; (2)
erred in finding that her claims of disabling pain are not

---

affect his or her capacity to do work-related physical and mental
activities.  Ordinarily, RFC is the individual's maximum
remaining ability to do sustained work activities in an ordinary
work setting on a regular and continuing basis, and the RFC
assessment must include a discussion of the individual's
abilities on that basis."  Social Security Ruling ("SSR"), 96-8p,
Policy Interpretation Ruling Titles II and XVI: Assessing
Residual Functional Capacity in Initial Claims, 1996 WL 374184 at
*2 (July 2, 1996) (citation omitted).

entirely credible; and (3) failed to give appropriate weight to
the opinions of her treating physicians.  Because the latter of
claimant's three arguments has merit, it is sufficient to focus
exclusively on that claim.


II.   Opinions of Claimant's Treating Physicians.

Claimant asserts that the ALJ erred by failing to give
appropriate weight to the opinions of her treating physician, Dr.
Kevin McGuire.  Dr. McGuire is Chief of Orthopedic Spine Surgery
at Beth Israel Deaconess Medical Center and evaluated claimant on
February 18, 2010 and August 5, 2010.  As part of those
evaluations, Dr. McGuire examined claimant and reviewed her MRI
and CT scans.  In September of 2010, Dr. McGuire completed a
"Medical Source Statement of Ability to Do Work-Related
Activities (Physical)," in which he opined that claimant could
occasionally lift no more than ten pounds; could sit, stand, and
walk for no more than 30 minutes at a time; could undertake no
activity for more than 30 minutes without a break; would
"frequently" miss work due to her pain; and that her ability to
maintain attention and concentration on work tasks throughout an
8-hour day would be "significantly compromised by pain."  Admin
Rec. at 616-22.  Claimant challenges the ALJ's decision to give
"the findings of Dr. McGuire less weight in making [his]
determination of disability in this case."  Id. at 16.

In discussing the weight that will be ascribed to the opinions of "treating sources," the pertinent regulations provide:

> Generally, we give more weight to opinions from [the claimant's] treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s).  If we find that a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairments(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed [in this section] in determining the weight to give the opinion.  We will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion.

20 C.F.R. § 404.1527(d)(2).  See also Social Security Ruling, Policy Interpretation Ruling Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions, SSR 96-2p, 1996 WL 374188 (July 2, 1996) ("If a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight; i.e., it must be adopted.").

Here, there is no doubt that Dr. McGuire's opinion is consistent with, and supported by, substantial evidence in the record including, for example, claimant's reports of significant

and debilitating pain; her periodic use of a back brace, a cane,
and powerful prescription pain medications; her receipt of
epidural steroid injections in an effort to manage that pain; her
two spinal surgeries; her MRI and CT scans; and the opinions of
several of claimant's other treating physicians and pain
management specialists that she is either incapable of performing
the tasks associated with gainful activity or, at best, arguably
capable of performing sedentary work.  See, e.g., Admin. Rec. at
474, 478, 526-30.  Consequently, the potentially dispositive
question presented would seem to be: Is Dr. McGuire's opinion
"not inconsistent with the other substantial evidence in the
record" and, therefore, entitled to controlling weight?  See SSR
96-2p.

     Having carefully reviewed both the medical record and the
ALJ's written decision, the court concludes that the ALJ's
decision does not identify sufficiently "substantial" evidence to
warrant his decision to discount Dr. McGuire's expert medical
opinions.  For example, the ALJ noted that:

> The claimant has had back pain since approximately
> 2007, which gradually worsened since that time.  Prior
> to her alleged onset date, the claimant had a
> laminectomy and discectomy at L4-L5 in January 2008.
> On the date of her alleged onset of disability,
> November 7, 2008, the claimant had fusion surgery at
> the L4/L5 level to try to alleviate her symptoms of
> persistent back pain.  After her fusion surgery, the
> claimant apparently "did well" for four or five months,

> but her pain eventually recurred in the form of low
> back pain, right leg pain, and left-sided buttock pain.

Admin. Rec. at 13 (citations omitted) (emphasis supplied).  But,
as evidence that claimant is not "suffering from a disabling
level of pain that is as debilitating as the claimant alleges,"
Admin. Rec. at 13, the ALJ points to medical records from that
four or five month period post-surgery, which suggest that
claimant recognized an "excellent benefit" from the surgery, was
"sitting comfortably" in the exam room, and could rise from a
seated position "without any problems."  Id.  Plainly, such
evidence is not particularly persuasive or compelling, since
claimant herself acknowledges the temporary benefits she felt
from the spinal fusion surgery.

The ALJ also points to the fact that on a few occasions,
when claimant found it necessary to go to the emergency room to
seek treatment for acute back pain, she actually drove herself to
the hospital (despite the fact that she says she does not
tolerate travel in a car well) and that she missed several
physical therapy appointments (despite having been told by a
treating physician that such therapy was critical to her
recovery).  Of course, neither of those facts is terribly
compelling, since claimant's ability to endure the pain
associated with a drive to the emergency room says little about

either her credibility or her ability to engage in substantial gainful activities.  And, as to the missed physical therapy appointments, claimant explained that she was unable to attend at least some of the missed appointments because her husband had been hospitalized (apparently on two occasions) and she could not secure a babysitter - testimony the ALJ's written decision does not discuss.

As further evidence that the claimant does not "suffer from a disabling level of back pain," the ALJ pointed to the fact that, during one of her visits to the emergency room, claimant reported that she had injured her back "lifting furniture." Admin. Rec. at 15, 386.  Again, however, in the context of the entire record, that incident seems a somewhat minor indicator. It may well illustrate that when claimant does attempt to engage in some form of modest activity, her back pain is exacerbated to the point of requiring emergency medical treatment.

The ALJ also made much of the fact that claimant told several of her treating sources that she occasionally requires the use of a cane to walk, despite having never actually been prescribed a cane.  Admin. Rec. at 15-16.  But, given her history of falling, it is difficult to see how her use of a cane undermines her claim of disabling pain.  The same is true of

claimant's statements to various treating professionals that she had been told to lift no more that 10 pounds.  Although the ALJ stated that "nowhere in the medical evidence of record is there any such limitation," Admin. Rec. at 16, that is incorrect.  Upon her discharge from Wentworth-Douglas Hospital shortly after her spinal fusion surgery, she was instructed "not to lift 10 pounds until MD appointment."  Admin. Rec. at 331.

     Finally, it probably bears noting that the "Physical Residual Functional Capacity Assessment" prepared by the non-examining state agency physician (Admin. Rec. at 360-67) and in which the ALJ placed "great weight" (Id. at 17) is neither terribly helpful nor particularly persuasive.  First, the preparing physician mistakenly (though through no fault of his own) believed that claimant had recovered to the point that she "actually had done some skiing." Id. at 367.  That was based upon an error in claimant's medical records.  She subsequently explained that she had merely accompanied others to a ski resort; she did not do any actual skiing.  Additionally, and perhaps more importantly, that RFC assessment was prepared just a few months after claimant's second surgery.  The record seems to indicate that the benefits of that surgery were short-lived and claimant's chronic pain recurred in or around June of 2009 (approximately one month after that RFC assessment was prepared).  As a result,

14

when he rendered his medical opinions, the non-examining

physician did not have the benefit of claimant's extensive

medical records (including evidence of numerous trips to the

emergency room, epidural steroid injections, prescription pain

medications, etc.) or the opinions of claimant's various treating

sources.  See, e.g., Spielberg v. Astrue, No. 10-cv-463-PB, 2011

DNH 171 (D.N.H. Oct. 18, 2011) ("A state agency consultant's

opinion that is based on an incomplete record, when later

evidence supports the claimant's limitations, cannot provide

substantial evidence to support the ALJ's decision to deny

benefits.") (citations omitted).


    The court need not belabor the point.  On this record, it

cannot conclude that the ALJ adequately supported his decision to

substantially discount the informed opinions of claimant's

various treating professionals, who stated that claimant was, in

essence, unable to engage in substantial gainful activity.  Most

importantly, the ALJ did not adequately explain his decision to

give the medical opinions of Dr. Kevin McGuire less than

controlling weight.


### Conclusion

    For the foregoing reasons, claimant's motion to reverse the

decision of the Commissioner (document no. 11) is granted to the

extent she seeks a remand to the ALJ for further proceedings.
The Commissioner's motion to affirm his decision (document no.
14) is denied.


Pursuant to sentence four of 42 U.S.C. § 405(g), this matter
is hereby remanded to the ALJ for further proceedings consistent
with this order.  The Clerk of Court shall enter judgment in
accordance with this order and close the case.


    **SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

March 16, 2012

cc:  Michael D. Seaton, Esq.
     T. David Plourde, Esq.